IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 15-cv-02581-PAB-MEH

NICHOLAS CARNIVAL,

      Plaintiff,

v.

GEICO CASUALTY COMPANY,

      Defendant.

---

### ORDER

---

    This matter is before the Court on defendant's motion for partial summary judgment [Docket No. 26] and defendant's motion in limine [Docket No. 27].  The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I.  BACKGROUND

### A.  Factual Background[1]

    Plaintiff Nicholas Carnival is a Colorado State Patrol officer.  Docket No. 26 at 2, ¶ 1.  On May 12, 2014, he was injured in a motor vehicle accident while working.  *Id*.  As a result, he was entitled to workers' compensation benefits.  *Id*., ¶ 3.  The driver of the other vehicle, who was at fault, had a motor vehicle insurance policy with a limit of $100,000.  *Id*., ¶ 2.  Plaintiff had purchased an automobile insurance policy from defendant GEICO Casualty Company that included underinsured motorist ("UIM")

---

[1] The following facts are undisputed by the relevant parties unless otherwise indicated.

coverage with a $50,000 limit per individual. *Id*. at 3, ¶ 5 (citing Docket No. 26-3 at 3).

Such UIM policies provide additional insurance that "cover[s] the difference, if any,

between the amount of the limits of any legal liability coverage and the amount of the

damages sustained . . . up to the maximum amount of the coverage obtained." Colo.

Rev. Stat. § 10-4-609(1)(c).

Plaintiff received $97,882.07 in workers' compensation benefits. Docket No. 26

at 2-3, ¶ 3 (citing Docket No. 26-2 at 1, 8-9). On June 22, 2015, Dr. Theodore

Villavicencio performed a medical examination as part of the workers' compensation

process. *Id*. Using the statutorily required criteria, Dr. Villavicencio found that plaintiff

had a whole body impairment rating of 15%. *Id*. This 15% disability rating was used as

part of a statutory formula to arrive at the $74,585.79 benefit for permanent partial

disability ("PPD"). Docket No. 26-2 at 1. Additionally, plaintiff's workers' compensation

benefits included $21,043.33 for medical expenses and $2,252.95 for temporary partial

disability ("TPD"). Docket No. 26-2 at 1.

On August 21, 2015, plaintiff settled his claims against the at-fault driver for the

$100,000 policy limit. Docket No. 26 at 2, ¶ 2 (citing Docket No. 26-1 at 4, 79:23-80:4).

That same day, plaintiff sent a letter to defendant offering to settle for the UIM policy

limit. Docket No. 26-5; *see also* Docket No. 26-3 at 3.

Defendant's claims adjuster evaluated plaintiff's claim and, without reference to

the workers' compensation settlement funds, considered plaintiff to be "well

compensated" by the $100,000 settlement with the at-fault driver's insurance company

despite the 15% whole person impairment rating. Docket No. 36-8 at 3. Defendant

sent plaintiff a letter with a "nuisance offer" of $1,000 without explaining how defendant

2

arrived at that figure.  *Id*. at 1; Docket No. 36-5 at 1.  Settlement negotiations ensued.

Plaintiff's counsel responded with a letter noting the workers' compensation evaluation indicated permanent physical impairment and stating, "any money my client receives from the bodily injury provider, which only has a $100,000 insurance policy, he has to return in subrogation [to the workers' compensation insurer], at this moment, approximately $95,000."  Docket No. 36-4 at 1.  Defendant asked for documentation of the subrogated claim, stating "it is our position that Mr. Carnival was well compensated by the bodily injury carrier's policy limits of $100,000.00," and again offering $1,000.  Docket No. 36-5.  Plaintiff's counsel responded by citing Colo. Rev. Stat. § 10-4-609 and arguing that the entire $97,882.07 was subrogated.  Docket No. 36-6 at 1.  Defendant gave permission for plaintiff to settle with the at-fault driver's insurance and requested plaintiff's counsel make contact "once settlement is reached regarding the underinsured motorist claim."[2]

Correspondence between GEICO claims handlers indicates there was uncertainty about whether plaintiff would be required to repay the entire amount of his workers' compensation settlement from the proceeds of his settlement with the at-fault driver.  Docket No. 36-8.  Defendant's claims adjuster expressed doubt that plaintiff would have to repay the full amount, but nevertheless reasoned that plaintiff received "$100k from the [at-fault driver's insurance] carrier, and $97,882.07 from work comp, so $197,882.07 total.  Even if he has to pay back work comp 100%, he's still walking away

---

[2] Plaintiff refers to this response as "nonsensical," but it is unclear that plaintiff ever told defendant that he had already settled this claim.  Neither party provided documents showing that defendant had been informed of the settlement with the at-fault driver before the date of this letter.  *See* Docket Nos. 26-5, 36-4, 36-6.

with $102k, not just $2k like [plaintiff's] attorney is trying to allege." *Id*. at 1.  Further

exchanges resulted in defendant raising its settlement offer to $5,000, but maintaining

that plaintiff's damages were compensated by his settlement with the at-fault driver.

Docket No. 36-9 at 1. Defendant stated, "it is our position that Mr. Carnival's $100,000

liability settlement fully covered his claimed specials[3] of $43,995.70 and over $55,000

for any subjective non-economic losses, which may already fully compensate him for

his claimed losses." *Id*.

### B.   Procedural History

Plaintiff filed suit on October 26, 2015 in the District Court for Jefferson County,

Colorado.  Docket No. 1-7.  Plaintiff alleges claims for breach of contract and

unreasonable delay or denial in payment of insurance benefits under Colo. Rev. Stat.

§§ 10-3-1115, 10-3-1116.  Docket No. 5 at 4-5.  Defendant removed the case to this

Court on November 24, 2015.  Docket No. 1.

Plaintiff seeks damages for "'past, present and future medical expenses, for

past, present and future pain and suffering, for personal injuries, for emotional distress,

and for other non-economic damages.'"  Docket No. 26 at 4, ¶ 9.  Plaintiff claims

$49,470.90 in medical expenses resulting from the accident.  *Id*., ¶ 10.  Despite

plaintiff's injuries, he has continued to work full time after the accident and does not

claim any lost wages through this case.  *Id*. at ¶ 8 (citing Docket No. 26-4 at 2 ("Plaintiff

is not claiming a wage loss")).

On March 29, 2016, defendant filed the pending motions.  Defendant's motions

---

[3] "Specials" presumably refers to "special damages."  *See* Black's Law Dictionary 419 (8th ed. 1999).

address the interaction between the workers' compensation insurance benefits received by plaintiff and the UIM coverage provided by defendant.  The summary judgment motion requests the Court to enter "partial summary judgment on Plaintiffs tort-based UIM claim for the TPD and PPD benefits paid by the workers' compensation insurer, as well on as any aspect of Plaintiffs extra-contractual claim based upon those same TPD and PPD amounts."  Docket No. 26 at 10.  On March 15, 2017, defendant filed a notice stating that it "withdraws its request for exclusion of evidence at trial of Plaintiff's workers' compensation temporary partial disability (TPD) and permanent partial disability (PPD) payments."  Docket No. 57 at 1, ¶ 1.  Accordingly, defendant only requests "exclusion of evidence of Plaintiff's workers' compensation disability rating." *Id*., ¶ 2.

### C.  Legal Background

Workers' compensation in Colorado is governed by the Colorado Workers' Compensation Act, Colo. Rev. Stat. § 8-42-101, *et seq*.  The Act "requires an evaluation of 'permanent medical impairment' to determine the amount of benefits to which a claimant is entitled."  *Gonzales v. Advanced Component Sys.*, 949 P.2d 569, 573 (Colo. 1997) (quoting Colo. Rev. Stat. § 8-42-107(1)).  The physical impairment ratings used in determining compensation are "based on the revised third edition of the 'American Medical Association Guides to the Evaluation of Permanent Impairment', in effect as of July 1, 1991."  Colo. Rev. Stat. § 8-42-107(8)(c).  PPD benefits "are determined by multiplying the impairment rating by a statutory age factor and multiplying that by 400 weeks, at a certain percentage of the injured employee's

5

average weekly wage." *Boardman v. Hauck*, No. 11-cv-01934-DME-BNB, 2012 WL 3545681, at *3 (D. Colo. Aug. 16, 2012) (citing Colo. Rev. Stat. §§ 8-42-107(d), 8-42-105).  With exceptions not relevant here, a workers' compensation claimant's claims against the at-fault party are assigned and subrogated to the workers' compensation insurer up to the amount paid out for economic, physical impairment, and disfigurement damages.  Colo. Rev. Stat. § 8-41-203.

Colorado has codified the common law rule precluding the admission of collateral source payments.  Colo. Rev. Stat. § 10-1-135(10)(a) provides:

> The fact or amount of any collateral source payment or benefits shall not be admitted as evidence in any action against an alleged third-party tortfeasor or in an action to recover benefits under section 10-4-609 [UM/UIM benefits].

Colorado courts have held that evidence of workers' compensation, Medicaid, PERA disability, and health insurance are inadmissible at trial.  *See Combined Commc'ns Corp. v. Pub. Serv. Co. of Colorado*, 865 P.2d 893, 902 (Colo. App. 1993) (workers' compensation)*; Volunteers of Am. Colorado Branch v. Gardenswartz*, 242 P.3d 1080, 1083 (Colo. 2010) (health insurance)*; Smith v. Kinningham*, 328 P.3d 258, 262-63 (Colo. App. 2013) (Medicaid); *Dep't of Human Servs. v. State Pers. Bd.*, 371 P.3d 748, 757 (Colo. App. 2016) (PERA disability).  After a verdict is reached, the amount of damages is subject to setoff by certain collateral source payments.  *Combined Commc'ns Corp. v. Pub. Serv. Co. of Colorado*, 865 P.2d 893 at 901 (citing Colo. Rev. Stat. § 13-12-111.6).  Workers' compensation benefits, however, are not subject to setoff.  *Id*. at 902.

## II.  ANALYSIS

### A. Summary Judgment Motion

#### 1.  Standard of Review

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment*.  Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

#### 2.  Discussion

Defendant presents a legal dispute that arises from the facts, but does not depend on any disputed facts.  Defendant argues that it is not responsible for repaying the plaintiff's subrogated workers' compensation claims.  Defendant argues that the amounts potentially due by plaintiff to the workers' compensation insurer are irrelevant to plaintiff's potential recovery of tort-based damages under the UIM policy; that is, "such statutory reimbursement obligation is ultimately a matter between Plaintiff and the workers' compensation insurer."  Docket No. 26 at 7.

7

Plaintiff does not contest these arguments with respect to his first claim, for UIM benefits under the policy, but does contest them with respect to his second claim, for bad faith breach of the insurance contract. Docket No. 36 at 1. Plaintiff argues that the defendant improperly used the workers' compensation payment to offset its potential liability in evaluating his claim. *Id*. at 10-11. In plaintiff's view, "Defendant's conduct during its evaluation to offset UIM benefits by the amount Plaintiff received in workers' compensation benefits provides evidence that Defendant acted unreasonably." *Id*. at 2. Plaintiff relies principally on two cases, *Toy v. Am. Family Mut. Ins. Co.*, No. 12-cv-01683-PAB-MJW, 2014 WL 321213 (D. Colo. Jan. 29, 2014), and *Adamscheck v. Am. Family Mut. Ins. Co.*, 818 F.3d 576 (10th Cir. 2016).[4]

In *Toy*, the insured settled with both the at-fault driver and the workers' compensation insurer before proceeding against his UIM insurer. 2014 WL 321213, at *1. The UIM policy at issue stated: "We will not pay for any element of 'loss' if a person is entitled to receive payment for the same element of 'loss' under any workers' compensation, disability benefits or similar law." *Id*. (citation omitted). Under this provision, the UIM insurer took into account the compensation paid by Mr. Toy's workers' compensation carrier when making its settlement offer and sought summary judgment that such conduct could not be considered bad faith as a matter of law. *Id*. This Court held that the policy provisions providing for offset were void as against public policy under Colorado law exempting workers' compensation claims as a basis for

---

[4] Plaintiff also argues that defendant's entire course of conduct in reviewing his claims is relevant to whether defendant acted in bad faith [Docket No. 36 at 9, 12-13], but this point does not bear on whether defendant's treatment of the workers' compensation payment was itself proper.

setoff. *Id.* at *9.  The Court found that there was insufficient basis "upon which to conclude that defendant's conduct in offsetting its settlement offers by the amounts Mr. Toy received from workers' compensation insurance was reasonable as a matter of law." *Id.*

In *Adamscheck*, the insurer similarly sought summary judgment that its settlement offer, which included a setoff of workers' compensation benefits, could not be considered bad faith.  818 F.3d at 582.  The Tenth Circuit found the UIM policy provision providing for a setoff of workers' compensation benefits was void as against public policy and held that denial of summary judgment was proper. *Id.* at 583.

Both of these cases are distinguishable from the situation here.  Plaintiff points to no evidence that defendant set off or otherwise took into account the workers' compensation benefits to reduce its settlement offers.  Conversely, in the cases plaintiff relies on, the insurers used the workers' compensation benefits as a portion of the recovery necessary to make the insureds whole in their evaluations of the insureds' claims and settlement offers.  *Toy*, 2014 WL 321213, at *8 ("Defendant does not dispute that its initial settlement offer took into account additional compensation for lost wages paid by Mr. Toy's workers' compensation carrier and that its adjusters offset the amount of workers' compensation benefits received by Mr. Toy pursuant to the UIM endorsement's exclusion language."); *Adamscheck*, 818 F.3d at 580 (insurer offered $65,000 that was specifically limited to lost wages that had not been compensated by workers' compensation).  Even in the internal communications cited by plaintiff, defendant's claims adjuster states that her evaluation was that plaintiff was well-

compensated by his $100,000 settlement with the at-fault driver's insurance carrier, which did not consider his workers' compensation settlement.  Docket No. 36-8 at 1. Notwithstanding her discussion of whether plaintiff might have to reimburse the workers' compensation insurer for his workers' compensation settlement, the claims adjuster ignored the workers' compensation benefit in making her evaluation of plaintiff's claim. Instead, she compared the $100,000 settlement to her evaluation of the amount of plaintiff's injuries without regard for the workers' compensation payment.  *Id*.; Docket No. 38 at 6.  Thus, she did what is permissible under Colorado law, evaluate whether there were "damages in excess of any amount paid by a tortfeasor in settlement or of any judgment against the tortfeasor."  *Adamscheck*, 818 F.3d at 585 (quoting *Jordan v. Safeco Ins. Co. of Am., Inc.*, 348 P.3d 443, 448 (Colo. App. 2013)).

Plaintiff does not dispute that, if he were to repay the workers' compensation insurer for the amount of his subrogated claim, he would retain more than $100,000, just as defendant's claims adjuster calculated in making her evaluation.  Docket No. 36-8 at 1.  Plaintiff simply disagrees that $100,000 is sufficient to compensate him for his injuries.  He claims damages greater than the total of his medical bills and other economic damages plus $55,000 that defendant's claims adjuster provided for in her evaluation based on the $100,000 settlement amount he had already received. *Compare* Docket No. 36-9 at 1 ("Mr. Carnival's $100,000 liability settlement fully covered his claimed specials of $43,995.70 and over $55,000 for any subjective non-economic losses, which may already fully compensate him for his claimed losses.") *and* Docket No. 36-8 at 3 *with* Docket No. 36-4 (plaintiff's counsel writing to defendant that "pain and suffering damages in Colorado has a cap of no less than $468,010" and

10

"a jury could award $2,000,000" for plaintiff's "permanent physical impairment").

Plaintiff may be able to show that defendant's evaluation was made in bad faith based

on other evidence, but defendant has shown that there is no genuine issue of material

fact about whether its claims adjuster properly disregarded the workers' compensation

settlement amount in evaluating the claim.  Accordingly, the Court will grant defendant's

motion for partial summary judgment.

### B.  Motion in Limine

Federal Rule of Evidence 403 provides that the Court "may exclude relevant

evidence if its probative value is substantially outweighed by a danger of one or more of

the following: unfair prejudice, confusing the issues, misleading the jury, undue delay,

wasting time, or needlessly presenting cumulative evidence."

Defendant argues that the statutory framework used to evaluate and

compensate workers' compensation claims uses confusingly different methods for

computing remedies and provides compensation for injuries that are not cognizable as

economic damages in tort.  Docket No. 27 at 3-5.  Relying on *Boardman*, 2012 WL

3545681, at *3, defendant argues that the "generic calculations and formulations" used

to determine and compensate permanent disability in the workers' compensation

system "were exclusively created for the workers' compensation system, and have no

application to the normal tort-based compensation system."  Docket No. 27 at 5.  As

such, defendant argues, the "probative value of evidence of the statutory workers'

compensation impairment rating [of 15%] is minimal and is substantially outweighed by

the danger of unfair prejudice under F.R.E. 403 and the risk of misleading the jury as to

the significance of the disability rating."  *Id*. at 6 (citing *Boardman*, 2012 WL 3545681, at

11

*3).

        In response, plaintiff argues that the Colorado Court of Appeals' decision in

*Carter v. Rodriguez*, No. 00-CA-1094, slip op. at 3 (Colo. App. Aug. 30, 2001)

(unpublished) (Docket No. 34-2), overruling a district court's decision to exclude an

Army disability evaluation that the plaintiff was 10% disabled, shows that such

percentages should be treated as admissible.  Docket No. 34 at 11.  Plaintiff also cites

several Colorado district court decisions permitting such evidence.  *Id*. at 13 (citing

Docket No. 34-5 (collected orders)).

        The Court finds that the danger of jury confusion and unfair prejudice

substantially outweighs the relevance of the disability rating here.  Fed. R. Evid. 403.

The probative value of the rating itself is minimal and, as plaintiff acknowledges, even if

"the impairment rating itself is excluded from introduction, Dr. Villavicencio could still

testify to Plaintiff's permanent injuries without referring to the numeric impairment

rating."  Docket No. 36 at 13.  Such evidence would serve the same purpose as the

potentially confusing impairment rating itself.  Further, due to Colorado's rule excluding

evidence of the workers' compensation payments themselves,[5] the potential for jury

confusion is increased.  *Boardman*, 2012 WL 3545681, at *3.  The Court disagrees that

*Boardman* is distinguishable because it did not involve bad faith claims.  The relevance

of *Boardman* is that it involved issues, like this case, regarding the extent of plaintiff's

damages.  *Id*.  Conversely, the Court finds *Carter* is distinguishable because *Carter* did

---

        [5] Defendant's notice of partial withdrawal [Docket No. 57] indicates it plans to
address these benefits at trial, but does not indicate what evidence it intends to present
or why it believes Colo. Rev. Stat. § 10-1-135(10)(a) does not exclude that evidence.
*Id*. at 2, ¶ 4.

not address issues of potential prejudice or confusion and did not involve collateral payments subject to Colorado's exclusion rule.  Docket No. 34-2 at 3.  The other Colorado state court decisions provided by plaintiff similarly lack relevant analysis. Docket No. 34-5.  Therefore, the Court will grant defendant's motion in limine to the extent it requests exclusion of the workers' compensation impairment rating.  *See* Docket No. 57.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's Motion for Partial Summary Judgment (F.R.C.P. 56(a), or, in the Alterntive, [sic] Motion for Determination of Law Concerning Interplay Between Plaintiff's Underinsured Motorist Benefits Tort-based Claim and Plaintiff's Statutory Workers' Compensation Claim (F.R.C.P. 7(b)) [Docket No. 26] is **GRANTED**. It is further

**ORDERED** that Defendant's Motion In Limine Re: Evidence of Workers' Compensation Disability Rating and Payments for Temporary Partial Disability and Permanent Partial Disability (F.R.C.P. 7(b)) [Docket No. 27] is **GRANTED** in part to the extent it requests exclusion at trial of evidence of plaintiff's workers' compensation disability rating.

DATED March 28, 2017.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

13